

U N I T E D   S T A T E S   D I S T R I C T   C O U R T
D I S T R I C T   O F   N E W   J E R S E Y

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ   07101-0419
(973) 645-6340

**WILLIAM J. MARTINI
          JUDGE**

# LETTER OPINION

February 5, 2010

Lewis G. Adler
Law Office of Lewis Adler
26 Newton Avenue
Woodbury, NJ 08096

Roger C. Mattson
26 Newton Avenue
Woodbury, NJ 08096
    *Attorneys for Plaintiff*s

Diane A. Bettino
Reed Smith, LLP
225 Fifth Avenue
136 Main Street
Suite 1200
Pittsburgh, PA 15222
    *Attorneys for Defendant*

    Re:   *Shinn et al. v. Champion Mortgage Company, Inc*.
          Civil Action No. 09-CV-00013 (WJM)

Dear Litigants:

    This matter comes before the Court on the Motion to Dismiss of Defendant Champion Mortgage Company, Inc. ("Champion"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Oral arguments were not held. Fed. R. Civ. P. 78. For the reasons set forth below, Defendant Champion's motion is **GRANTED** in part and **DENIED** in

1

part.

## I.     BACKGROUND

This action arises out of a mortgage loan obtained by Plaintiffs Stanley and Catherine Shinn ("the Shinns") from Defendant Champion in 2001.  Cmplt. ¶ 13.  The Shinns are New Jersey residents.  Cmplt. ¶ 8.  Champion, a non-depository licensed lender with its principal place of business in New Jersey, is a division of Key Bank USA, N.A. ("Key Bank").  Cmplt. ¶¶ 2, 14.  Key Bank is a national bank headquartered in Ohio.  Cmplt. ¶ 7.  Defendant retained the law firm of Fein, Such, Kahn, & Shepard ("Fein") as its counsel.  Cmplt. ¶ 3.

The Shinns' mortgage, obtained for the purchase of a home in Oaklyn, NJ, was in the amount of $102,000.  Cmplt. Ex. B; *id.* ¶ 1.  The mortgage contract was executed on April 23, 2001.  Cmplt. ¶ 13.  By October 2004, the Shinns had begun to miss payments.  Cmplt. ¶ 15.  On February 22, 2005, Champion initiated foreclosure proceedings against the Shinns.  Cmplt. ¶ 16.  On that same day, Champion also sent Plaintiffs a letter offering to reinstate the original mortgage and abstain from going forward with the foreclosure in exchange for a reinstatement fee in the amount of $7,981.07 (the "reinstatement fee").  Cmplt. ¶ 17.  The reinstatement fee was broken down as follows: $4,190.55 in principal and interest, $209.55 in late fees, $377.19 in deferred late fees, $60 in non-sufficient fund charges, $550.68 for a corporate advance balance, and $2,593.10 in attorneys' fees and costs.  Cmplt. Ex. A.  The letter specified that the reinstatement fee would have to be paid by March 7, 2005, or new figures would need to be obtained.  *Id*.

On June 22, 2005, Champion sent the Shinns a new letter and contract (the "Forbearance Agreement") adjusting the amount of the required fees to $12,905.24, with a required down payment of $7,000.  Cmplt. Ex. B.  The document was on Champion letterhead.  *Id.*  The Forbearance Agreement also clearly states that "Champion Mortgage is a debt collector attempting to collect a debt and any information obtained will be used for that purpose."  *Id.*  The terms of the Forbearance Agreement were approved by Champion's mitigation loss manager and agreed to by the Shinns.  Cmplt. ¶ 19.  There are no allegations by any party that the Forbearance Agreement is in default, and according to the Complaint, it has been paid in full.  *Id.*  There is no additional information about the status of the Shinns' reinstated mortgage.

On January 2, 2009, the Shinns filed a complaint with this Court against Champion and Fein.[1]  They seek to bring the matter as a class action.[2]  The Complaint contains ten

---

[1] Although initially named as a defendant, Fein was dismissed from the action in November 2009.

[2] At this juncture, the Court finds that Plaintiffs have sufficiently pled the requirements for federal diversity jurisdiction over a class action lawsuit, in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  CAFA provides that federal jurisdiction exists over a class action in which any one plaintiff is diverse from any one defendant and the aggregate amount in controversy exceeds $5,000,000.  The Court is cognizant of exceptions to CAFA, under which a federal court may or must decline jurisdiction depending on how many members of the proposed plaintiff classes are citizens of the state in which the action was filed, if the primary defendant is a citizen of that state as well.  Nevertheless, the Court is satisfied that a sufficient number of the members of all

counts against Champion: (1) breach of contract, (2) negligence, (3) breach of the duty of good faith and fair dealing, (4) unjust enrichment, (5) unfair and deceptive assessment and collection of fees, (6) violation of the Fair Foreclosure Act, (7) violation of New Jersey court rules for attorneys' fees, (8) violation of the New Jersey Consumer Fraud Act, (9) violation of the Truth-in-Consumer Contract, Warranty, and Notice Act, and (10) violation of the Licensed Lenders Act.  Specifically, Plaintiffs allege that Champion and Fein "engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law," including attorneys' fees and costs in excess of those actually incurred.  Cmplt. ¶ 20.  The Complaint contains few additional or supporting factual details.  The gravamen of Plaintiffs' claims appears to be that Champion overcharged the Shinns in connection with their mortgage and the Forbearance Agreement.

## II.   ANALYSIS
### A.   Standard of Review

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint does not need to contain detailed factual allegations, "the 'grounds' of [the plaintiff's] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id.* at 1964-65.  Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*,

---

proposed plaintiff classes would be domiciled outside the state of New Jersey to meet the requirements, having not seen any allegations or evidence to the contrary.  *See Kaufman v. Allstate New Jersey Ins. Co.,* 561 F.3d 144, 153 (3d Cir. 2009) (finding that the burden of proving the applicability of a CAFA exception falls upon the party opposing jurisdiction).  The Court is also satisfied that a sufficient amount in controversy has been alleged.  *See Lamond v. Pepsico, Inc.*, No. 06-CV-3043, 2007 WL 1695401, at *3 (D.N.J. June 8, 2007).  No objections to jurisdiction have been raised.  However, the Court may decide to further probe diversity and amount in controversy at a later point in time and directs the parties to conduct jurisdictional discovery as the case progresses.

481 F.3d 187, 211 (3d Cir. 2007).

### B. Count I—Breach of Contract

Count I alleges that the mortgage agreement and note contained a provision allowing Champion to be reimbursed only for actual expenses incurred, that Champion has charged Plaintiffs fees in excess of actual expenses, and therefore that Champion violated the terms of the contract. Cmplt. ¶¶ 20, 39, 41. Plaintiffs also allege that Champion failed to disclose in advance additional fees such as a $60 charge for returned checks. Cmplt. ¶ 40. However, Plaintiffs do not cite or allege the existence of any contractual provision requiring such disclosures. Furthermore, Plaintiffs do not attach the note or mortgage, and the Complaint does not provide the specific language of any contractual provisions that were allegedly breached. Rather, the Complaint says only that the loan documents were "standard form notes and mortgages" and that their provisions were "uniform." Cmplt. ¶ 38.

To prevail on a breach of contract claim under New Jersey law, a plaintiff must prove four elements: (1) the existence of a valid contract between plaintiff and defendant; (2) defendant breached the terms of the contract; (3) plaintiff performed its obligations under the contract; and (4) plaintiff was injured as a result of defendant's breach. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc*., 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (citing *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985)).

Here, Plaintiffs' allegations are exceedingly vague, and Plaintiffs' failure to attach copies of the mortgage or note make it difficult for the Court to determine whether a breach has been sufficiently alleged to survive a motion to dismiss. To the extent that Plaintiffs allege breach of contract with respect to Defendant's failure to provide advance notice of fees such as the returned check fee, this claim fails and will be dismissed. Plaintiffs do not allege the existence of any contractual provision requiring advance disclosure of such fees. Without a contractual provision to that effect, there can be no breach. Likewise, to the extent that Plaintiffs allege that Defendant in general breached the Forbearance Agreement, this claim also fails. If Plaintiffs fail to allege the existence of a provision that was breached or specific conduct that constituted the breach, the claim cannot survive.

However, to the limited extent that Plaintiffs allege breach of a contractual provision prohibiting the charging of fees in excess of those actually incurred, Plaintiffs appear to have sufficiently stated a claim for which relief can be granted. Cmplt. ¶ 41. Although Plaintiffs do not identify the specific language of the provision, at this stage in the proceedings, the Court must accept as true Plaintiffs' allegations that such a provision exists and that Defendant charged fees in excess of those incurred. *See Baraka*, 481 F.3d at 211. Plaintiffs also identify a breach of the provision, namely that with respect to attorneys' fees, costs of suit, recording fees, certificate fees, and sheriff's fees, Defendant allegedly charged them amounts higher than those actually expended. Cmplt. ¶ 20. Plaintiffs further allege that they paid Defendant for these excessive charges and that they were harmed in the amount of the difference between the incurred charges and the amount

actually charged by Plaintiffs.  Cmplt. ¶19.

Plaintiffs concede that they cannot ascertain the precise amount that they were overcharged, because Defendant has never provided them with itemized bills.  Pl. Br. at 2-3.  Nevertheless, Plaintiffs have sufficiently alleged the elements of the cause of action and provided sufficient background facts for this one narrow theory of liability only. Furthermore, the 12(b)(6) motion to dismiss standard requires the Court to use its common sense when deciding whether or not a plaintiff has sufficiently stated a claim for relief. S*ee Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009) (stating that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  The common sense and judicial experience of this Court suggest that in ordinary business circumstances, when a service is performed, it is typically accompanied by an itemized bill, particularly when one is requested.  The Defendant's apparent failure to provide an itemization by no means conclusively establishes overcharging or that Defendant cannot justify its fees and expenditures.  Nevertheless, at this juncture, it provides a sufficient basis, in conjunction with the above-mentioned reasons, to find that Plaintiffs have sufficiently stated a claim for breach of contract, on this particular theory of liability.

### C.     Count II—Negligence

The Complaint alleges that "Champion owed Plaintiffs and other Class members a duty of care with respect to servicing their mortgage loans," that Champion was negligent, and that Plaintiffs have suffered damages as a direct result.  Cmplt. ¶¶ 44-47.  To state a claim for negligence under New Jersey law, a plaintiff must demonstrate the following: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) injury or harm to the plaintiff; and (4) proximate cause.  *Anderson v. Sammy Redd and Associates*, 278 N.J. Super. 50, 56 (App. Div. 1995).

However, it is well settled in New Jersey that this claim is barred by the economic loss doctrine.  *See Perkins v. Washington Mutual, FSB,* 655 F. Supp. 2d 463, 471 (2009). The economic loss doctrine provides that a tort remedy does not arise from a contractual relationship unless the breaching party owed an independent duty imposed by law.  *Saltiel v. GSI Consultants, Inc*. 170 N.J. 297, 316 (2002); *Perkins,* 655 F. Supp. 2d at 471 (finding that the economic loss doctrine barred a negligence claim brought by a plaintiff mortgagor against a defendant mortgagee, because both were parties to the mortgage contract and there was no other duty owed).  If a defendant owes a duty of care separate and apart from the contract between the parties, then a tort claim such as negligence may lie.  *Saltiel,* 170 N.J. 297 at 314.  However, the mere failure to fulfill obligations encompassed by the parties' contract is not actionable in tort.  *Id*. at 316-317.

Here, Plaintiffs and Defendant were parties to a contract, namely the mortgage and the note.  Plaintiffs' claims are based on allegedly improper payments arising out of these contracts, which cannot give rise to a tort remedy.  There is no other relationship between

the parties. As Defendant argues, relevant authority demonstrates that a bank does not owe a duty of care to a borrower, even if the borrower is a consumer. *See United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 553 (App. Div. 1997). Therefore, the negligence claim fails and must be dismissed.

Plaintiffs argue in their opposition brief that this case "is about more than the loan" and that the "impact to Mr. & Mrs. Shinn concerns their credit worthiness, the emotional upset from Defendants' egregious actions and possible loss of their home in addition to any contract damages." Pl. Br. at 21. However, courts have routinely rejected this argument. *See Skypala v. Mortgage Electronic Registration Systems, Inc*., No. 08-CV-5867, 2009 WL 2762247, at *6 (D.N.J. September 1, 2009) (rejecting an identical argument because the court found it incredible that the defendant's alleged overcharging of fees in connection with the curing of the plaintiff's default could have a negative effect on the plaintiff's creditworthiness and because "it is axiomatic that a plaintiff cannot collect contract damages for emotional distress" (citations omitted)); Restatement (Second) of Contracts § 353 and Comment a ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.... Damages for emotional disturbance are not ordinarily allowed."). The Court rejects this argument as well. The claim must be dismissed.

### D. Count III—Breach of the Duty of Good Faith and Fair Dealing

Plaintiffs also allege that Defendant breached the duty of good faith and fair dealing. Cmplt. ¶ 51. The duty of good faith and fair dealing is implicit in every contractual relationship in New Jersey. *Wilson v. Amerada Hess Corp*., 168 N.J. 236, 244 (2001). It operates to ensure that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc*. 148 N.J. 396, 420 (1997). However, as Defendant notes, Plaintiffs have not sufficiently alleged a violation of this duty. Dft. Br. at 22. Indeed, Plaintiffs' Complaint does not identify any fruits of the contract to which they were entitled and with which Defendant interfered. Plaintiffs merely allege that they were overcharged. Therefore, the claim must be dismissed.

### E. Count IV—Unjust Enrichment

Count IV alleges that Defendant was unjustly enriched at Plaintiffs' expense. Cmplt. ¶ 57. In New Jersey, an unjust enrichment claim requires a plaintiff to allege that (1) at plaintiff's expense, (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it. *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).

However, as Defendant argues, unjust enrichment is a legal theory providing for recovery only in the absence of a contract. *See Duffy v. Charles Schwab & Co., Inc.,* 123 F. Supp. 2d 802, 814 (D.N.J. 2000); *Shapiro v. Solomon*, 42 N.J. Super. 377, 383 (App.

Div. 1956).   When a valid and unrescinded express contract between the parties exists, courts will not permit recovery pursuant to the theory of unjust enrichment.   *Ryan v. Federal Express Corp.*, 78 F.3d 123, 127 (3d Cir. 1996).

Plaintiffs present several arguments in opposition to Defendant's position.   They argue that their contract claim is not an impediment to their quasi-contract claim because they are permitted to plead in the alternative.[3]   Pl. Br. at 25.   They also assert that Defendant's denial that it breached the contract means that Defendant is liable in quasi-contract.   *Id.*   Lastly, Plaintiffs argue that in order to dismiss the unjust enrichment claim, "the court must hold as a matter of law that the violations are a breach of contract."  *Id.*

The logic behind Plaintiffs' argument is extremely flawed.   Contrary to Plaintiffs' assertions, Defendant does not argue that Plaintiffs' contract claim prevents Plaintiffs from filing a claim for unjust enrichment.   What Defendant does argue is that because a valid and unrescinded express contract exists, a fact that Plaintiffs do not meaningfully refute, Plaintiffs are not entitled to recovery under a theory of unjust enrichment.   Dft. Br. at 24.   This is simply because, given the existence of the express contract, there is no need to resort to alternate theories of recovery.   Furthermore, the Court notes that a finding of no liability in contract does not guarantee a finding of liability under an alternative theory such as quasi-contract, nor the other way around.

Plaintiffs also argue that, contrary to Defendant's position, recovery in contract and in quasi-contract are not mutually exclusive.   Pl. Br. at 25.   However, the very case Defendant cites for this proposition states that the existence of an express contract does not preclude the existence of an implied contract only if "the implied contract is ***distinct*** from the express contract."   *See Baer v. Chase*, 392 F.3d 609, 617 (3d Cir. 2004) (emphasis added) (stating that the "implied contract, if it is to be valid, must be entirely unrelated to the express contract.   The existence of an express contract precludes the existence of an implied contract dealing with the same subject.") (internal citations omitted).

Here, although Plaintiffs do not state the nature of the implied contract that they allege, it seems that it would have to cover the very same ground as the express contract if, as Plaintiffs allege, it would prohibit the same conduct.   Therefore, the Court finds no need to turn to alternate theories of recovery, because a valid and express contract exists between the parties that governs their rights.   This Count must be dismissed.

### F.   Count V—Unfair and Deceptive Assessment and Collection of Fees

Plaintiffs allege that because Champion collected fees that were not permitted by the mortgage contract or by law, Defendant has violated Section 5(a) of the Federal Trade

---

[3] The Court notes that although Plaintiffs use the terms unjust enrichment, quasi-contract, and implied contract interchangeably, the three concepts are related but not entirely synonymous.   *See* Restatement (Second) of Contracts § 4 Comment b (1981); *Luden's Inc. v. Local Union No. 6 of Bakery, Confectionary & Tobacco Workers Int'l Union of Am.*, 28 F.3d 347, 365 (3d Cir. 1994); *Terrace v. Williams*, No. 07-CV-099, 2009 WL 2043870, at *11 (V.I. July 1, 2009).   Nevertheless, for the purposes of this motion, the Court will construe the meanings of these terms liberally and will deem Plaintiffs' use of any one as encompassing the meanings of all three.

Commission Act ("FTCA"), 15 U.S.C. § 45(a).   Cmplt. ¶ 64.   While Plaintiffs concede that there is no private right of action under the FTCA, they argue that a violation of the FTCA constitutes a violation of the New Jersey Consumer Fraud Act ("NJCFA") and that there is a private right of action under the NJCFA.   Pl. Br. at 26; Cmplt. ¶ 64.

Plaintiffs have not provided any authority in support of their contentions that collecting fees in violation of contract or law violates the FTCA or that violations of the FTCA constitute violations of the NJCFA.   While the Court is willing to consider a novel argument, Plaintiffs must articulate some sort of rationale for their position.   Because Plaintiffs have not provided any sort of reasoning or authority from an analogous point of view whatsoever, their claim fails and must be dismissed.

### G. Count VI—Violation of the Fair Foreclosure Act

In Count VI, Plaintiffs allege that the Fair Foreclosure Act ("FFA"), N.J.S.A. 2A:50-57(b)(3), prohibits the charging of attorneys' fees and costs in excess of those allowed by the New Jersey court rules.   Cmplt. ¶ 66.   They also allege Champion charged for costs and attorneys' fees in excess of the amount permitted by NJ Rule 4:42-9(a)(4), and that this conduct constitutes an unconscionable business practice under the NJCFA. Cmplt. ¶¶ 67-68.

The FFA provides a defaulting mortgagee the right to cure the default and reinstate the mortgage by, among other requirements, paying or tendering court costs and "attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey."   N.J.S.A. 2A:50-57(b)(3).   The relevant court rule identified by Plaintiffs, NJ Rule 4:42-9(a)(4), provides

> *In an action for the foreclosure of a mortgage,* the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3 1/2 %, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1 1/2 %; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.   NJ Rule 4:42-9(a)(4).

Plaintiffs fail to cite any authority demonstrating that charging legal fees in excess of New Jersey court rules violates the NJCFA.[4]   But even assuming that this is true, Plaintiffs

---

[4] However, Plaintiffs do cite to a case demonstrating that a violation of a rent control ordinance was actionable under the NJCFA.   *See Wozniak v. Pennella*, 373 N.J. Super. 445 (App. Div. 2004).   This case also states that the NJCFA is very broad and covers so many deceptive practices that they could not all be enumerated.   Thus, just because a course of conduct is not specifically prohibited by the statute, that does not mean it does not fall within its scope.

have not demonstrated a violation of the court rules, because NJ Rule 4:42-9(a)(4) governs the fees that can be charged in an action for foreclosure only. The Court does not find that NJ Rule 4:42-9(a)(4) applies to legal fees associated with a forbearance agreement, particularly where the parties have contractually agreed to pay legal fees. *See Amboy National Bank v. Ahmed*, No. L-3051-05, 2007 WL 397055, at *6 (App. Div. February 7, 2007). Here, by the terms of the Forbearance Agreement, Defendant did not go forward with its action for foreclosure and instead the parties reached a settlement. In addition, the Forbearance Agreement stated that Plaintiffs "agreed under the terms of the note and mortgage to pay legal fees and costs [to Defendant] in the event of default."[5] After Plaintiffs' default, if Defendant had proceeded with the action for foreclosure, then the court rules would likely have applied. But because the parties settled, the rules do not apply. Thus, to the extent that Plaintiffs allege legal fees charged in connection with the Forbearance Agreement were excessive under the court rules, this claim fails.

### H. Count VII—Violation of New Jersey Court Rules for Attorneys' Fees and Costs

Plaintiffs allege that Defendant charged attorneys' fees and costs in excess of the amount permitted by NJ Court Rules and that a violation of the NJ Court Rules constitutes a violation of the NJCFA. Cmplt. ¶ 71. As stated above, whether or not a violation of New Jersey court rules constitutes a violation of the NJCFA in the foreclosure context, Plaintiffs have failed to demonstrate a violation of the New Jersey court rules with respect to attorneys' fees here because the relevant court rule applies to foreclosure actions and not to settlements, the situation before this Court. This claim fails for the same reasons as Count VI and must be dismissed.

To the extent that Plaintiffs allege overcharging with respect to costs, in addition to attorneys' fees, this claim fails for identical reasons. The language of Rule 4:42-10(a), governing costs in a foreclosure action, mirrors the language of Rule 4:42-9(a)(4) and states that it applies to "an action for the foreclosure of a mortgage," not to a settlements of an action for the foreclosure of a mortgage.

### I. Count VIII—Violation of the New Jersey Consumer Fraud Act

Plaintiffs allege that "the actions of the Defendants constitute unconscionable business practices in violation of the New Jersey Consumer Fraud Act." Cmplt. ¶ 77. Plaintiffs fail to state which actions constitute unconscionable violations of the act. Even assuming that Plaintiffs' Complaint is speaking to the alleged overcharging of attorneys' fees and costs in violation of NJ court rules, this claim fails for the reasons stated above in Counts VI and VII and must be dismissed.

---

Nevertheless, this is too tenuous to establish that violating New Jersey court rules violates the NJCFA.

[5] The Court notes that Plaintiffs' agreement to pay legal fees has no implications on their contract claim. An agreement to pay legal fees is not an agreement to pay excessive legal fees, *i.e.* fees beyond those permitted by the parties' agreement.

### J. Count IX—Violation of the Truth-in-Consumer Contract, Warranty, and Notice Act

Count IX asserts that Champion violated New Jersey's Truth-in-Consumer Contract, Warranty & Notice Act ("TCCWNA"). Cmplt. ¶ 80. The TCCWNA provides in pertinent part,

> No seller, lessor, creditor, lender or bailee shall in the course of his business ... enter into any written consumer contract ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time ... the consumer contract is signed or the warranty, notice or sign is given or displayed. N.J.S.A. 56:12-15.

A person who violates the TCCWNA is liable for a $100 civil penalty or actual damages, at the election of the consumer. N.J.S.A. 56:12-17.

In general, the TCCWNA prohibits entering into a contract which bargains away legal, but not contractual, rights. Assuming that the mortgage and note are "consumer contracts" to which the TCCWNA applies, Plaintiffs have not identified which provisions of either document allegedly violate a clearly established right of Plaintiffs or responsibility of the relevant defendants, as provided for by law. *See Perkins,* 655 F. Supp. 2d 463 at 470 (dismissing a claim brought pursuant to the TCCWNA because the plaintiff failed to identify which provisions of a mortgage or note allegedly violated a right clearly established by positive law as opposed to one established by contract). Therefore, the claims must be dismissed.

### K. Count X—Breach of the Licensed Lenders Act

Count X alleged a violation of the Licensed Lenders Act. Plaintiffs concede that this count should be dismissed.

### L. Litigation Privilege

Defendant raises the argument of litigation privilege and argues that it bars Plaintiffs' entire Complaint. Dft. Supp. Br. at 1. The litigation privilege is a well-established New Jersey doctrine that protects all statements made by attorneys or parties during the course of judicial or quasi-judicial proceedings. *Ruberton v. Gabage,* 280 N.J. Super. 125, 133 (App. Div. 1995). Defendant asserts that the litigation privilege applies to all statements made by Defendants with respect to Plaintiffs' foreclosure and settlement procedures, such that the entire case cannot proceed. Dft. Supp. Br. at 1.

New Jersey courts have established that the litigation privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have

some connection or logical relation to the action. *Hawkins v. Harris*, 141 N.J. 207, 216 (1995). The privilege is broadly construed and extends to statements made during settlement proceedings. *Rickenbach v. Wells Fargo Bank*, N.A. *et al*., 635 F. Supp. 2d 389, 401 (D.N.J. 2009); *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 587 (2006). Although it was initially meant to apply only to defamation and related causes of action, it has been applied to foreclosure proceedings and settlements as well. *Rickenbach*, 635 F. Supp. at 401; *Ogbin v. Citifinancial Mortg. Co., Inc.*, No. 09-CV-0023, 2009 WL 4250036, at *7 (D.N.J. November 19, 2009).

Defendant relies on the premise that Plaintiffs' entire action arises out of the Forbearance Agreement, such that most if not all of the supporting evidence would be privileged. This is simply not true. Plaintiffs' claims are inextricably linked to the original mortgage and note, which were drafted significantly prior to the commencement of any judicial proceedings and would not fall under the privilege's scope. Even the claims which appear to be based on the Forbearance Agreement (overcharging of attorneys' fees post-default) are also based on the mortgage and note, because the Forbearance Agreement merely reiterated Plaintiffs' obligations with respect to attorneys' fees established in the mortgage and note. It does not appear that any claims are based solely on documents created during the pendency of judicial or quasi-judicial proceedings.

Moreover, even if there were certain claims that were affected by the privilege, they would not be barred outright. At most, the privilege would prevent the admissibility of certain documents at trial, such as the Forbearance Agreement or the letter containing the first reinstatement fee. However, whether or not enough evidence would exist without those documents to prove Plaintiffs' claims is not a question to be decided at this juncture. Therefore, the Court finds that the litigation privilege has no effect on Plaintiffs' claims at this stage in the proceedings.

### M. Voluntary Payment Rule

Defendant also raises the voluntary payment rule, arguing that it prevents Plaintiffs from bringing their Complaint. Dft. Br. at 12. Under this rule, when payments are made "under a mistake of law or in ignorance of law, but with full knowledge of the facts," those payments cannot be recovered absent a showing of fraud, duress, or improper conduct on the part of the payee. *In re Resorts, Inc.*, 181 F.3d 505, 511 (3d Cir. 1999).

Although Plaintiffs have not alleged duress, they most certainly do allege fraud. Cmplt. ¶¶ 64, 68, 77. Moreover, because Defendant never itemized the charges, it does not appear to the Court that Plaintiffs had full knowledge of the facts when they made payments to Defendant. Pl. Br. at 2-3. Additionally, to the extent that Defendant charged Plaintiffs for expenses beyond those actually incurred, Plaintiffs certainly did not have full knowledge of the facts. Thus, the voluntary payment rule might defeat claims alleging charges that exceeded statutory limitations, because any recovery would be due to Plaintiffs' mistake of law. However, the Court has already found alternate grounds upon which to dismiss those claims. The voluntary payment rule would not affect Plaintiffs'

ability to recover fees paid that exceeded contractual limitations, because Plaintiffs were also operating under a mistake of fact that was allegedly propagated by Defendant.

### N. Entire Controversy Doctrine

Finally, Defendant asserts that Plaintiffs' action is barred by the entire controversy doctrine. Dft. Br. at 8-9. The entire controversy doctrine requires parties to fully litigate all aspects of a dispute in a single legal proceeding including all purported claims, counterclaims, and crossclaims. *See Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997); *Kaselaan & D'Angelo Assocs., Inc. v. Soffian*, 290 N.J. Super. 293, 299 (App. Div. 1996). It applies not only to claims that were fully litigated but to those that settled as well. *Id.*

Defendant argues that any disputes with respect to fees and costs charged should have been raised during the foreclosure and settlement procedures. Dft. Br. at 12. The problem with this argument is that the alleged misconduct did not occur until the Forbearance Agreement was signed and Defendant enforced its terms by collecting the allegedly improper fees from Plaintiffs, at which point there was nothing that could be done except bring an additional action. Therefore, the Court finds that the entire controversy doctrine does not present a bar to Plaintiffs' action.

## III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Counts II-X and **DENIED** as to Count I. Counts II - X are **DISMISSED WITH PREJUDICE**, as the Court finds that amendment would be futile. Count I remains, although it has been limited to the single theory of liability identified above. An appropriate order follows.

    /s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**